Herbert G. Hanan, Ethel Hanan, Virginia Hanan Birch, Bruce Hanan, an Infant, Bernadine Thole Hanan, Guardian, Matilda Hanan, as Trustee, v. Commissioner.
Hanan v. Commissioner
Docket Nos. 1539, 1541, 1542, 111334, 111335, 111336, 111337, 1540.
United States Tax Court
1944 Tax Ct. Memo LEXIS 408; 3 T.C.M. (CCH) 670; T.C.M. (RIA) 44273; July 6, 1944
*408 I. H. Sher, Esq., 30 Broad St., New York, N. Y., and William Gilligan, Esq., 25 Broadway, New York, N. Y., for the petitioners. Charles P. Reilly, Esq., for the respondent. HILL Memorandum Opinion HILL, Judge: These are consolidated proceedings involving 1938 income tax liability and transferee liability of the four former shareholders of Hanan Securities Corporation, dissolved December 23, 1938 pursuant to the provisions of section 112(b)(7) of the Revenue Act of 1938. Respondent has determined a deficiency in the corporation's 1938 income tax of $8,471.49 and in Docket Nos. 1539 through 1542 asserts this liability against each of the petitioners as transferees of the corporation's assets. Petitioners do not dispute their liability as transferees if in fact the deficiency is justified, which they deny. The sole controverted question in the transferee cases is whether the corporation realized taxable income from the distribution of a dividend in kind. The income tax deficiencies determined against the petitioners are respectively as follows: Docket
No.
Petitioner
Deficiency
111334
Bernadine Thole Hanan, Testa-
mentary Guardian of Bruce Ha-
nan, an infant
$3,611.55
111335
Herbert G. Hanan
3,274.16
111336
Ethel Hanan
3,231.15
111337
Virginia Hanan Birch
3,225.31
*409 In these cases the question to be resolved is whether the distribution of a dividend in kind resulted in the realization by the corporation of earnings and profits. The question arises in connection with the taxation to the petitioners of the distribution as a dividend under section 115 of the Revenue Act of 1938 as well as their tax liability upon the liquidation of the corporation under section 112(b)(7) of the same Act. It has been stipulated that petitioner in Docket Nos. 111334 through 111337 are entitled to deduct as non-business expenses the respective amounts of $1,599.04, $96.62, $92.30 and $92.30. Effect will be given to this agreement in the recomputation under Rule 50. Petitioners, Herbert G. Hanan, Ethel Hanan and Virginia Hanan Birch are individuals residing in East Portchester, Connecticut. They each filed their 1938 income tax returns on the cash basis with the collector for the district of Connecticut. Bernadine Thole Hanan is the duly qualified testamentary guardian of Bruce Hanan, an infant, Matilda Hanan is trustee for Bruce. Bruce's 1938 income tax return was filed on the cash basis by his guardian with the collector for the third district of New York. With each *410 of such returns was filed an election on Form 964 to have gain upon the liquidation of Hanan Securities Corporation by reason of their stock ownership recognized and taxed in accordance with section 112 (b) (7) of the Revenue Act of 1938. The corporation's 1938 tax return was filed with the collector for the district of Delaware. Hanan Securities Corporation, hereinafter called "the corporation", was incorporated in 1932. In exchange for its stock it received certain securities among them being several thousand shares of the common stock of United Shoe Machinery Corporation, hereinafter called "United". The corporation's stock was owned equally by the four petitioners (treating Bruce as a petitioner and disregarding the trust) at the time of its liquidation in December, 1938 and it had been so owned and held for a period in excess of two years prior to that time. On December 31, 1937, the corporation's accumulated earnings and profits were $52,506.93 and its earnings and profits for 1938, excluding any amounts arising from the distribution of dividends in kind, amounted to $67,925.60. In January, 1938, the corporation paid a cash dividend of $7,030, each of the four shareholders *411 receiving $1,757.50. On August 18, 1938 its directors adopted the following resolution: "RESOLVED, that there be distributed from the surplus assets of this corporation, as a dividend in kind to the stockholders now of record, sixteen hundred (1600) shares of the common stock of United Shoe Machinery Corporation, a New Jersey corporation, now owned by the corporation." Pursuant thereto the 1600 shares of United's stock immediately were distributed, 400 shares to each petitioner. The fair market value of the 1600 shares at the time of the distribution was $122,800. They had been carried on the corporation's books at a cost of $62,400 and this amount was charged to the surplus account and credited to the United common stock account on the books when the distribution was made. In October, 1938 the petitioners other than Bruce each sold the 400 shares of United so received by them from the corporation. In computing gain they used as a basis the August 18, 1938 market value of the stock, being $30,700 for each block of 400 shares. On December 23, 1938 the corporation was completely liquidated pursuant to the provisions of section 112 (b) (7) of the Revenue Act of 1938. Each shareholder *412 received $3,112.72 in cash and one-fourth of the corporation's other assets in redemption and cancellation of his stock. The fair market value of the assets received in liquidation by each shareholder exceeded the basis of his stock by at least $12,750.63. The assets distributed in complete liquidation did not include any stock or securities which had been acquired by the corporation after April 6, 1938. Additional income taxes for 1938 were paid by Herbert on February 28, 1942 in the amount of $213.22; by Ethel on February 26, 1942 in the amount of $212.32; by Bruce on March 28, 1942 in the amount of $393.51; and by Virginia on March 5, 1942 in the amount of $212.31. These amounts were taken into account by respondent in his determination of deficiencies in the income taxes of the respective individuals. The controversy in all the cases herein stems from the appreciation in value of the 1600 shares of United stock owned by the corporation. As noted, it was acquired by the corporation, together with other assets, in exchange for its own capital stock and was given a cost basis of $62,400. When distributed in kind on August 18, 1938, its market value was $122,800, or $60,400 in excess *413 of its cost. The corporation did not report such $60,400, or any amount, as income realized by it from the payment of the dividend in kind. Respondent added $60,400 to the corporation's 1938 income and this, with minor undisputed adjustments, accounts for the deficiency determined in its 1938 income tax and, consequently, the asserted liability in the transferee cases. Neither did the petitioners regard such $60,400 as includable in the corporation's earnings and profits which otherwise are agreed to have been $120,432.53 up to the date of its dissolution and liquidation. Thus, in their view of the transaction, the August distribution of United stock valued at $122,800 resulted in a dividend under section 115(a) to the extent of $113,402.53 only ($120,432.53 less the cash dividend of $7,030 paid in January, 1938), with the balance of the distribution constituting a distribution of capital. The distribution was reported accordingly. Since, under petitioner's theory, the distribution in kind exhausted the corporation's earnings and profits, Section 112 (b) (7) (E) (ii) of the 1938 Act [1] is said by them to apply in computing each petitioner's gain upon the liquidation. Hence, they *414 each reported as a long-term capital gain from such liquidation $1,556.36, being 50% of the cash of $3,112.72 received. They contend that no further gain is to be recognized upon the liquidation pursuant to section 112 (b) (7) and they are right if their theory with regard to the amount of the corporation's total earnings and profits is correct. In determining the deficiencies in Docket Nos. 111334 to 111337, inclusive respondent increased the corporation's earnings and profits by $60,400, the amount by which the United stock distributed on August 18, 1938 had appreciated over cost. He thus held the August distribution of United stock to be a dividend to the full extent of its market value and further held there existed a balance of earnings and profits of the corporation in the amount *415 of $51,002.53 on the date of liquidation. Therefore, respondent applied section 112 (b) (7) (E) (i) of the 1938 Act [2] by virtue of which each petitioner's gain from the liquidation is to be recognized to the extent of his ratable share of the corporation's earnings and profits or one-fourth of $51,002.53. Respondent, of course, contends that both the adjustments described above were properly made. Moreover, he contends that the corporation's earnings and profits must be increased by the $60,400 even though we should hold that the corporation received no taxable income or gain of $60,400 by reason of the dividend in kind. We appreciate that taxable income and earnings and profits are not synonymous terms. There are cases where a corporation's earnings and profits are increased without a corresponding increase in taxable *416 income. We first take up the question of whether the corporation realized taxable income or gain by the August dividend. An examination of the resolution by which the dividend was authorized discloses that here was a declaration and distribution of a dividend in kind as distinguished from the declaration of a dividend in a fixed amount made payable by the distribution of property appreciated in value over the cost to the corporation. Cf. . Respondent admits as much. Hence, the question is controlled by wherein, under analogous facts, the Supreme Court said, "Both tribunals below rightly decided that petitioner derived no taxable gain from the distribution among its stockholders of the Islands Edison shares as a dividend." See also (on appeal to C.C.A. 2 [1]); . We cannot agree as respondent contends, that the General Utilities case turned mainly on procedural *417 points. It is true, the Supreme Court held that the Circuit Court of Appeals was not warranted in considering and reversing the Board on an entirely different point not raised before the Board. But this ruling in no way devitalized its decision on the same question as that before us now. Nor do we agree that the General Utilities case fails to represent the law as it exists today. Cases cited by respondent which he contends contradict the General Utilities holding involve the disposition of appreciated property in satisfaction of a pecuniary obligation of one sort of another. Obviously, such cases are not conflicting but, on the contrary, demonstrate the material distinguishing feature between the situations calling for the application of the rule of the General Utilities case and the rule applied in We hold that the corporation realized no taxable income by reason of the dividend in kind of the appreciated United stock and that petitioners, in the transferee cases, are not liable for taxes based upon the contested adjustments. This brings *418 us to the question of whether the same dividend in kind effectually increased the corporation's earnings and profits by $60,400. The question must be answered in the negative on the authority of Estate of , aff'd , which respondent admits stands squarely against his position. Also against him is In support of his contention that corporate earnings were increased by the amount of the appreciation of the dividend shares over their cost to the corporation, regardless of the decisions in the cases cited in the above paragraph, respondent relies on cert. den. ; and . These cases each contain important factual differences distinguishing them from the instant situation. It is sufficient to point out one which is common to all three. In the Wakefield *419 and Timberlake cases it appeared that the stock and securities distributed as a dividend in kind had been purchased by the distributing corporation out of earnings and profits accrued after March 1, 1913. A similar fact situation was assumed in the Binzel case, there being no proof to the contrary. Contrariwise, here, as in the Timken case, the stock made the subject of the dividend was acquired by the distributing corporation in exchange for its original issue of capital stock. It is to be noted that the Timken and Wakefield cases, wherein opposite conclusions were reached on their different facts, were both recently decided on appeal by the same Circuit Court, the Sixth, and within four months of each other. Respondent has presented another theory of the cases which he urges is an alternative to that disposed of next above. He contends that, although petitioners under section 115 (j) are required to include dividends in kind in their gross income at fair market value, earnings and profits of the corporation must be held reduced thereby only to the extent of the cost basis to the corporation of the property distributed. By applying this method of computation, *420 respondent reaches exactly the same result with respect to the ultimate effect of the distribution upon earnings and profits as he does under the theory just rejected. This is not surprising, for it is apparent that the so-called alternative theory is not that at all but merely the restatement of the primary one in reverse. The question is whether earnings and profits of the corporation were increased by reason of a dividend in kind consisting of stock which appreciated in value from $62,400 to $122,800, or $60,400. We have held that they were not. In other words, we have held that for the purposes of applying sections 115 and 112 (b) (7) to determine petitioners' tax liability, the corporation's admitted earnings and profits are not to be increased by $60,400 before reducing or exhausting them by the $122,800 stock distribution to give effect to the distribution. It follows that in determining the status of earnings and profits after the distribution it is equally improper to diminish the previously admitted $122,800 value of the stock distribution by the amount of its appreciation of $60,400 over cost. If a bridge is out to a traveler going from north to south, it is likewise out *421 to a traveler going from south to north. Manifestly, it would be an anomalism, while disapproving a remainder because the minuend had been increased by "quantity A", to approve the same remainder reached by decreasing the subtrahend by "quantity @". y/et this is what respondent asks us to do. We decline to do so. The treatment accorded the distribution of the United Stock on the corporation's books is immaterial for our purposes. Upon the authority and for the reasons given, petitioners are sustained in Docket Nos. 111334 through 111337. Since the corporation had earnings and profits of $113,402.53 without resorting to the appreciation, the August 18, 1938 distribution of United stock having a market value of $122,800 was a dividend to the extent of such $113,402.53, section 115 (a), and includable ratably in petitioners' gross income at that figure, section 115 (j). The distribution was made out of the earnings and profits in the amount of the fair market value of the United stock to the extent that earnings and profits were available, section 115 (b); , with the excess going to reduce the basis of petitioners' stock *422 in the corporation, section 115 (d). The earnings and profits having been exhausted prior to the liquidation in December, 1938, under section 112 (b) (7), the distribution in liquidation was taxable to petitioners under the provisions of section 112 (b) (7) (E) (ii), as they contend, and not under section 112 (b) (7) (E) (i). That effect may be given certain uncontested adjustments and the agreed deductions for non-business expense previously mentioned. Decisions will be entered under Rule 50. Footnotes
1. (ii) There shall be recognized, and taxed as short-term or long-term capital gain, as the case may be so much of the remainder of the gain as is not in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock or securities acquired by the corporation after April 9, 1938, exceeds his ratable share of such earnings and profits.↩
2. (i) There shall be recognized, and taxed as a dividend so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, such earnings and profits to be determined as of December 31, 1938, but without diminution by reason of distributions made during the month of December, 1938; and↩
1. Commissioner's appeal subsequently dismissed by CCA-2.↩